IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DARNELL PONDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 21-1239-MN-CJB |
| ) | |
| KHAAZRA MAARANU, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| ELECTRONIC COMMERCE LLC, ) | |
| ) | |
| Nominal Defendant. ) | |

**MEMORANDUM ORDER**

Presently pending before the Court in this highly contentious business dispute is Plaintiff Darnell Ponder's ("Plaintiff" or "Ponder") motion seeking a temporary restraining order, or "TRO" (the "Motion"). (D.I. 10) Plaintiff and Defendant Khaazra Maaranu ("Defendant" or "Maaranu") are each 50% owners in a Delaware limited liability company known as Electronic Commerce, LLC ("EC"). With his Motion, Plaintiff seeks, *inter alia*, to enjoin Defendant from: (1) "acting as a party having an adverse interest to [EC], or on behalf of [such a party]"; (2) "communicating with any current litigants of [EC], its current and former merchants, or [with EC's sponsoring bank] the Commercial Bank of California" ("CBCal"); and (3) "acting in violation of [certain fiduciary duties] to [EC], including [by] making any false and negative

1

statements about [EC], its employees and agents." (D.I. 10-4)[1]  Defendant opposes the Motion. For the reasons set forth below, the Court DENIES Plaintiff's Motion.

I.   **BACKGROUND**

The Court writes primarily for the parties here, as both sides wish for a quick resolution to the Motion. Thus, the Court will dispense with a lengthy recitation of the relevant factual background, and instead will reference any relevant facts or portions of the record in Section III below.

With regard to this matter's procedural background, the Court notes that the instant Complaint (styled as a "Verified Petition") was originally filed in the Delaware Court of Chancery on August 23, 2021 (followed thereafter by a motion seeking a TRO in that court). (D.I. 1-2)[2]  Defendant removed the matter to this Court on August 27, 2021. (D.I. 1)  The instant Motion was filed on September 9, 2021, (D.I. 10), and briefing was completed on the Motion on September 20, 2021, (D.I. 25).  The Court held a hearing on the Motion via videoconference on October 6, 2021 (hereinafter, "Tr.").[3]

II.   **LEGAL STANDARD**

"A temporary restraining order . . . is an 'extraordinary remedy' that should be granted only in 'limited circumstances.'"  *Noven Pharms., Inc. v. Mylan Techs. Inc.*, C.A. No. 17-1777-

---

[1]  Defendant also has filed a motion seeking a TRO ("Defendant's TRO Motion") and motion for a preliminary injunction, which relates to allegedly harmful actions that Plaintiff has taken with regard to EC. (D.I. 16)  The Court addresses Plaintiff's Motion here. It will take up Defendant's TRO Motion in a separate opinion that it will issue as soon as is practicable.

[2]  The parties have also been involved in litigation against each other in California state court. (D.I. 10 at ¶ 13)

[3]  The Court has been referred the instant case to hear and resolve all pre-trial matters, up to and including expert discovery matters, by United States District Judge Maryellen Noreika. (D.I. 26)

LPS, 2018 WL 4052418, at *2 (D. Del. Aug. 20, 2018) (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)); *accord Bullock v. Carney*, 463 F. Supp. 3d 519, 523 (D. Del. 2020) ("[A] temporary restraining order is an extraordinary and drastic remedy . . . that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.") (internal quotation marks and citations omitted, emphasis in original), *aff'd*, 806 F. App'x 157 (3d Cir. 2020).  TROs "are ordinarily aimed at temporarily preserving the status quo." *Hope v. Warden York Cty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020).  The "status quo," as defined by the United States Court of Appeals for the Third Circuit, is the "the last, peaceable, noncontested status of the parties." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 318 (3d Cir. 2015) (internal quotation marks and citation omitted).  A motion seeking a TRO is subject to the same standards as a motion seeking a preliminary injunction.  *Deluna v. Delaware Harness Racing Comm'n*, C.A. No. 19-1788 (MN), 2019 WL 5067198, at *2 (D. Del. Oct. 9, 2019) (citing cases).

A movant for injunctive relief must first establish two factors:  (1) "it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not[])[;]" and (2) it must show "that it is more likely than not to suffer irreparable harm in the absence of preliminary relief[]."  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).  A movant cannot be granted a TRO unless it establishes both of these first two factors.  *Id*.  "If a movant can meet its burdens on the first two factors, then the court should consider two more factors: whether 'the balance of equities tips in [the movant's] favor' and whether 'an injunction is in the public interest.'"  *Bullock*, 463 F. Supp. 3d at 523 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008)); *see also Reilly*, 858 F.3d at 179.  "Failure to establish any of the elements, especially either of the first two, renders

3

preliminary injunctive relief inappropriate." *Deluna*, 2019 WL 5067198, at *2 (internal quotation marks and citations omitted).

**III.     DISCUSSION**

Below, the Court will first set out the legal standard for establishing a likelihood of success on the merits and address the parties' arguments as to that factor. Then it will do the same with regard to the irreparable harm factor, ultimately explaining why the failure of evidence there leads the Court to deny the Motion.

**A.     Likelihood of Success on the Merits**

To demonstrate a likelihood of success on the merits, a party must "prove a prima facie case, not a certainty that he or she will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001) (citation omitted). "[The court does] not require at the preliminary stage a more-likely-than-not showing of success on the merits because a 'likelihood of' success on the merits does not mean more likely than not." *Reilly*, 858 F.3d at 179 n.3 (brackets and citations omitted).

In Plaintiff's opening brief, when Plaintiff explained why he is likely to succeed on the merits here, he focused only on three particular types of claims found in his Complaint; the Court will address only the first of those in detail here. (D.I. 10 at ¶¶ 18-20; Tr. at 16)[4] That is

---

[4]     The second type of claim that Plaintiff emphasized in his briefing was his assertion that Defendant "has deliberately made false statements to CBCal that intend[] to damage and injure the relationship between [EC] and its sponsor bank." (D.I. 10 at ¶ 19; *see also* D.I. 1-2 at 118-19 (Plaintiff asserting that a portion of his breach of fiduciary duty claim is based on this conduct)) Here though, Plaintiff simply has not provided enough specificity in the record for the Court to assess this claim. In the Complaint, Plaintiff alleges only that "[o]n April 2, 2021, [Defendant] sent an email to CBCal stating that accounts that were opened by [EC] should never have been opened and accusing [EC] of fraud" and "demanded that CBCal immediately release reserves of several high-risk merchants with whom [Defendant] closely associates and with whom he personally spends his time." (D.I. 1-2 at 109; *see also id.* at 118 (Plaintiff alleging, with no further specificity, that Defendant "provided false information" to

4

Plaintiff's claim that Defendant "has breached [the "Limited Liability Company Agreement of Electronic Commerce LLC, a Limited Liability Company[,]" a contract signed by Plaintiff and Defendant (the "LLC Agreement")] and his fiduciary duties, including the duty of loyalty" by "repeatedly tak[ing] actions adverse to [EC]'s efforts to pursue recoupment of funds it is contractually entitled to from merchants." (D.I. 10 at ¶ 18; *see also* D.I. 1-2 at 124-37[5]) This is a reference to a portion of Plaintiff's claims in the second and third Counts of his Complaint; the second Count is for "Breach of the LLC Agreement" (the "breach of contract claim") and the third Count is for "Breach of Fiduciary Duty" (the "breach of fiduciary duty claim"). (D.I. 1-2 at 117-19 (emphasis omitted))[6] With these claims, Plaintiff is, *inter alia*, asserting that Defendant

---

CBCal); D.I. 10, ex. A at ¶ 23 (Plaintiff alleging in his declaration, without further specificity, that Defendant made statements to CBCal "in opposition to" EC or "not in the interests of" EC)) Plaintiff does not provide more written detail about these "false statements" that would better explain what are the relevant circumstances, or why the statements are false. And he provides only one piece of documentary evidence regarding the statements—an e-mail string in which it is hard to parse (without further explanation from Plaintiff, which is not found in the record) what Defendant is saying to CBCal and why it is false. (D.I. 10, ex. A at ex. F)

      The third and final type of claim that Plaintiff emphasized in his briefing is that Defendant "has encouraged baseless litigation against [EC]." (D.I. 10 at ¶ 20) The only clear reference to purportedly "baseless litigation" in the Complaint is the allegation that Defendant provided "inaccurate information" to certain of EC's merchants, which in turn has "prompted lawsuits and counterclaims[.]" (D.I. 1-2 at 106; *see also id.* at 118; D.I. 10, ex. A at ¶¶ 5, 20; Tr. at 31) There is no specific information in the record about what "lawsuits and counterclaims" Plaintiff is referring to, or who are the relevant merchants who filed them, or how Defendant has assisted those merchants in asserting these "lawsuits and counterclaims." (*Id.*) During oral argument, Plaintiff's counsel also suggested that this allegation could be meant to reference a lawsuit involving EC and CBCal. (Tr. at 31) That suit is referenced briefly in Plaintiff's Complaint. (D.I. 1-2 at 106, 109-10, 118-19) But there is little to nothing *specific* in the Complaint about what Defendant did to encourage that litigation. (*Id.*; *see also* D.I. 10, ex. A at ¶ 23) This is all too scant a record for the Court to conclude that the claim is likely to succeed.

      [5]     With regard to citations to D.I. 1-2, throughout the Court will cite to the ECF-generated page numbers found at the top of that document.

      [6]     Both of these Counts are mistakenly listed as "Count II" in the Complaint. (D.I. 1-2 at 116-19)

5

wrongfully assisted merchants who were being sued by EC for monies owed, by helping those merchants combat EC's claims against them.[7]

The Court first addresses Plaintiff's assertion that this conduct amounts to a breach of the fiduciary duty of loyalty pursuant to Delaware law (which the parties agree applies to all claims here).[8] The Court can deal with this issue briefly, as it concludes that Plaintiff has not done enough to demonstrate why he is likely to succeed on the merits. This conclusion has nothing to do with the facts of record. Instead, the Court notes that in Plaintiff's briefing, Plaintiff did not provide the Court with any citation to Delaware caselaw regarding the duty of loyalty. As a result, Plaintiff did not advise the Court as to: (1) what suffices to make out a breach of that duty; and (2) how caselaw involving similar factual circumstances demonstrates that Defendant, in light of the record, has in fact breached that duty. (*See generally* D.I. 10) The law in Delaware regarding a breach of fiduciary duty is multi-faceted, and in the absence of any meaningful citation to relevant caselaw (and explanation as to why it supports Plaintiff's claim), the Court is unprepared to conclude that such a claim is likely to succeed.[9]

---

[7] (*See* D.I. 1-2 at 106-07 (Plaintiff alleging in the Complaint that EC is in litigation with certain of the merchants it works with, in an attempt to collect chargeback fees, fines, penalties and early termination fees that those merchants owe to the company, and that Defendant has "actively aligned himself with defendants in those lawsuits" and has been "providing information that contradicts the information provided by [EC], has stated that [EC] is engaged in fraud and theft, that [EC's] officers are scandalous, and otherwise assisting these merchants to encourage them not to pay the amounts that they owe to [EC]"); D.I. 10, ex. B at ¶¶ 3-6)

[8] (D.I. 1-2 at 118 (Plaintiff alleging that Defendant breached, *inter alia*, the fiduciary duty of loyalty by "contact[ing] merchants that are in litigation with [EC] to aid them in opposing the litigation and encourag[ing] them to not perform the contractual duties they owe to [EC]"))

[9] The Court provides just one example here as to why this failure of briefing is fatal to Plaintiff's argument. In response to Plaintiff's assertion that Defendant engaged in a breach of the duty of loyalty, Defendant responded that in light of the "business judgment rule," he was not

The Court thus turns to Plaintiff's claim that Defendant's conduct here amounts to a breach of contract.[10] Plaintiff here is primarily asserting a breach of Section III.H.2 of the LLC Agreement ("Section III.H.2"),[11] which states as follows:

> *Competition with the Company.* The Members shall refrain from dealing with the Company in the conduct of the Company's business as or on behalf of a party having an interest adverse to the Company unless a majority, by individual vote, of the Members excluding the interested Member, contests thereto. The Members shall refrain from competing with the Company in the conduct of the Company's business unless a majority, by individual vote, of the Members excluding the interested Member, contests thereto. In the event that a Member is the sole Member of the Company, no vote shall be required.

(D.I. 1-2 at 128)

The Court agrees with Plaintiff that he has presented sufficient evidence to demonstrate a likelihood of success regarding this claim. For example:

- One of the exhibits attached to Plaintiff's opening brief is an e-mail sent by Defendant on May 6, 2021 to Jeet Banerjee. (D.I. 10, ex. A at ex. C) In the e-mail, Defendant writes that he

---

likely to be found to have committed such a breach. (D.I. 14 at ¶¶ 3, 16-17) During oral argument, the Court queried Plaintiff's counsel as to Plaintiff's view on whether the business judgment rule applied to joint owners of an LLC under Delaware law (a disputed issue here). (D.I. 25 at ¶ 7) Plaintiff's counsel acknowledged that, as to this issue, Plaintiff had "not developed the argument enough" for the Court to determine whether the defense could be overcome. (Tr. at 36-37; *see also id*. at 65-66 (Defendant's counsel citing *In re Solutions Liquidation LLC*, 608 B.R. 384 (Bank. D. Del. 2019) for the proposition that the rule does apply in this context))

[10] Under Delaware law, in order to state a claim for breach of contract, a plaintiff "'must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff.'" *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009) (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

[11] (D.I. 1-2 at 117 (Plaintiff alleging a breach of the LLC Agreement due to Defendant's "[c]ompeting with [EC] in the conduct of [EC's] business without the consent of a majority of the Members, excluding [Defendant]" and citing to Section III.H.2 of the LLC Agreement); *see also* D.I. 10 at ¶ 3)

> "apologize[s] that [Mr. Banerjee has] received a civil lawsuit from [EC.]" (*Id.*) Defendant goes on to state that Plaintiff is the person responsible for filing the lawsuit at issue, that Defendant is in a legal dispute with Plaintiff and that in Defendant's view, EC and Plaintiff have "add[ed] legal, yet very unethical conditions in our Terms and Conditions [and] charging people fees, all without one conversation with me, including this lawsuit." (*Id.*) Defendant ends the e-mail by stating that the "lawsuit against you is unnecessary, unwarranted and I don't understand it at all" and that if "there is anything [Mr. Banerjee] need[s] from me to make this go away, please let me know." (*Id.*)[12]
>
> - In the Complaint, Plaintiff similarly alleges that Defendant has been in contact with Zeus Holding Group ("Zeus"), a merchant who is being sued by EC. (D.I. 1-2 at 107) The Complaint alleges that Defendant "emailed that merchant and stated that [EC] has added unethical conditions to its agreement, that [EC] is engaged in unethical conduct, [and] that the lawsuit against the merchant is 'unnecessary and unwarranted[.]'" (*Id.*) Although Plaintiff did not provide any corroborating documentary evidence about this dispute with Zeus, the allegations closely track the nature of Defendant's statements to Mr. Banerjee (described above), and are thus persuasive.[13]

---

[12]     During oral argument, Plaintiff's counsel could not identify what merchant Mr. Banerjee was associated with. (Tr. at 21) Nevertheless, the content of the e-mail, cited above, makes clear enough that Mr. Banerjee's company had a contractual relationship with EC and was being sued by EC at the time.

[13]     Plaintiff also provided some other evidence along with its Motion that is apparently meant to demonstrate that Defendant tried to help other merchants who are being sued by EC or otherwise had an interest adverse to EC. However, Plaintiff failed to provide the Court with enough information about these disputes to make his allegations understandable.

For example, Plaintiff provides a declaration from Jeremy Stock, an attorney for EC, in which Mr. Stock describes how Defendant appears to have been speaking with and providing support to Jamee Desouza and her husband; Ms. Desouza and her husband are apparently in some type of dispute with EC. (D.I. 10, ex. C) But the declaration never: (1) states that Ms. Desouza and her husband are merchants who are working with EC; (2) states that Ms. Desouza and her husband have been sued by EC; or (3) otherwise explains what type of "interest" Ms. Desouza and her husband actually have that is "adverse" to EC.

Additionally, in the Complaint, Plaintiff asserts that Defendant has been "working with" Robert Armata and has shared "confidential employee data and company records with" Mr. Armata, who in turn has been threatening and harassing EC. (D.I. 1-2 at 107-08) But although

8

> *See Mamadou v. Nielsen*, Case No. 19-CV-263-JPS, 2019 WL 3936745, at *2 (E.D. Wis. Aug. 19, 2019) (noting that the presence of corroborating documentary evidence to support allegations in an affidavit is helpful to a movant seeking a TRO).

Section III.H.2 would seem to prohibit this conduct. The merchants at issue surely could be understood to be parties "having an interest adverse to [EC]" in a matter that relates to "the conduct of [EC's] business[.]" (D.I. 1-2 at 128); *Adverse*, Black's Law Dictionary (11th ed. 2019) (defining "adverse" as "1. Against; opposed (to). 2. Having an opposing or contrary interest, concern, or position. 3. Contrary (to) or in opposition (to). 4. H[ostile].").[14] And if Defendant is providing these merchants with information that could be used by the merchants to frustrate EC's suit against them and prevail in that suit (as evidenced above), then this could reasonably be seen as Defendant "[d]ealing with [EC]" by acting "on behalf of" those merchants.[15] *See, e.g.*, *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, — A.3d —, 2021

---

Plaintiff's opening brief states that Mr. Armata is a merchant who is in litigation with EC, (D.I. 10 at ¶ 10), the record does not make it very clear that Mr. Armata is in fact suing or being sued by EC (nor does it otherwise neatly describe Mr. Armata's adverse interest as to EC). (*Id*.; *id*., ex. A at ¶ 19 (Plaintiff's declaration, which fails to clearly explain the nature of the dispute between Mr. Armata and EC); *see also* D.I. 1-2 at 107; Tr. at 21 (Plaintiff's counsel unable to further explain what portions of the record provide context for the dispute between Mr. Armata and EC)) Plaintiff did attach an e-mail to his declaration that is from Mr. Armata, in which Mr. Armata references a "lawsuit"; that could be a reference to litigation filed by EC against him. But without further helpful context in the record, the e-mail (and Plaintiff's description of it) are just too opaque for the Court to rely on here. (D.I. 10, ex. A at ex. B; *see also* Tr. at 22-23)

[14] In his briefing, Defendant suggested that the meaning of the word "adverse" was unduly vague, undefinable and overbroad. (D.I. 14 at ¶¶ 4, 32-33) The Court is not convinced. The word "adverse" has a readily understandable meaning, as set out above. (D.I. 25 at ¶ 9) Indeed, during oral argument, Defendant's counsel seemed to equivocate about whether his client did or did not have an understanding of what the term means. (Tr. at 56, 58-60)

[15] During oral argument, Defendant's counsel suggested that Defendant's conduct in contacting the above-referenced merchants would not be a breach of Section III.H.2. This is purportedly because the suits by EC against these merchants are "fraudulent" and "damaging" to EC; thus, in Defendant's telling, he was only trying to *help* EC by talking to these merchants and

9

WL 4165159, at *5 (Del. Sept. 13, 2021) (noting that Delaware courts interpret contractual terms to give effect to their plain and ordinary meaning, if the term's meaning is not subject to more than one reasonable interpretation); *see also* (Tr. at 24-25).[16]

With Plaintiff thus having demonstrated a likelihood of success on the merits as to one type of claim at issue in his Complaint, the Court moves on to consider the irreparable harm factor (as it relates to that claim).

### B.  Irreparable Harm

With regard to the second TRO factor, the "'relevant inquiry is whether, at the time the injunctive relief is to be issued, the party seeking the injunction is in danger of suffering irreparable harm.' The irreparable harm alleged must be actual and imminent, not merely speculative." *Shabazz v. Delaware Dep't of Corr.*, C.A. No. 16-570-RGA, 2020 WL 998541, at *2 (D. Del. Mar. 2, 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,

---

by finding a way to stop EC from pursuing baseless suits against them (i.e., suits that could ultimately cause *EC* future harm). (Tr. at 47) In other words, it sounds like Defendant's argument here is that his communications were not "on behalf of" a "party having an interest adverse" to EC, because the merchants do not really have an "interest adverse" to EC—instead, EC's *true interest* lies in dismissing these "damaging," never-should-have-been-brought lawsuits. (*Id*. at 50, 56) That is surely a creative argument. But it is one that Defendant did not make in its answering brief, and so it is waived as to this Motion. (D.I. 14 at 5-7); *see also Progressive Sterilization, LLC v. Turbett Surgical LLC*, Civil Action No. 19-627-CFC, 2020 WL 1849709, at *3 n.4 (D. Del. Apr. 13, 2020). Moreover, with very little in the record from Defendant about *why* these merchant suits are baseless, the argument does not otherwise persuade the Court that Plaintiff's breach of contract claim lacks significant merit. (Tr. at 52-53)

[16]      In his briefing, Defendant did make the argument that it would not violate Section III.H.2 for him to contact customers "in litigation with [EC] to determine the nature of their claims" or to "explain to [those] customers [] that he is in litigation with Plaintiff" or to "determine the nature of their concerns [about the litigation.]" (D.I. 14 at ¶ 18) That may well be so. But the type of conduct that Plaintiff is referring to here is not *that kind of* benign-sounding activity. Instead, Plaintiff is focusing on instances where Defendant informed merchants that EC's conduct was "unethical" and that it had engaged in "unnecessary" and "unwarranted" litigation against the merchants. It is hard to see how *that* type of conduct is not an example of Defendant acting "on behalf of a party having an interest adverse" to EC.

528 U.S. 167, 180-81 (2000)). To demonstrate irreparable harm, a plaintiff must establish that it is subject to harm that cannot be adequately compensated after the fact though monetary damages. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000). This is "not an easy burden" to meet. *Id.* at 485. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 94 S. Ct. 937, 939 (1974) (internal quotation marks and citation omitted).

Plaintiff has not made the requisite showing of irreparable harm. More specifically, Plaintiff has not sufficiently demonstrated how—if he is successful against Defendant as to his claim of breach of Section III.H.2—any harm suffered could not be adequately remedied through the provision of money damages. If Defendant wrongfully helps a merchant successfully combat EC's lawsuit against him or her, then it would seem that there is an amount of monetary damages that aligns with the harm that Plaintiff suffered (as an owner of EC) due to the breach: i.e., the amount of money that EC lost the ability to collect, via the suit, from the merchant.[17] As the

---

[17] During oral argument, when the Court asked Plaintiff's counsel how the harm flowing from this alleged breach of contract would be irreparable, counsel replied that in matters involving "personal injury, you [can] put a dollar to everything" but argued that with these "merchant lawsuits . . . all these merchants that are in the lawsuits with [Defendant's] help, they're now all talking to each other and they have this network and this collective brain that they're circling in and, you know, [EC], there is no amount of money, you know, if the company can't sustain itself. It implodes. And sure, maybe you can put a dollar sign to that, but there is not a dollar sign to it if there is nothing left [of EC.] It's, you know, devoid." (Tr. at 26-27) Counsel went on to suggest that another concern is that certain of the merchants at issue could communicate negative information shared by Defendant to regulators, who in turn might turn their sights on EC. (*Id*. at 28-29, 77-78)

This discussion did not alter the Court's view that an insufficient record has been made as to irreparable harm. For one thing, the above arguments were not made by Plaintiff in his opening brief regarding this factor; thus, the arguments are waived as to the Motion. *See Progressive Sterilization, LLC*, 2020 WL 1849709, at *3 n.4. Instead, in his briefing, Plaintiff argued that irreparable harm would arise—not because Defendant's assistance to the merchants would cause EC to "implode" or to be subject to regulatory inquiries—but because it could "create delay and [lead] to frivolous counterclaims" from the merchants and cause funds owed to

United States Supreme Court has held, the "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson*, 94 S. Ct. 937, 953 (1974) (internal quotation and citation omitted). Plaintiff has not sufficiently explained why this is not the case here. And to the extent that there might have been other, better arguments to be made about why Defendant's actions could cause irreparable harm to Plaintiff, Plaintiff did not make them.

It bears repeating here that the entry of a TRO is an "extraordinary and drastic" remedy. For the reasons set out above, Plaintiff has not shown that irreparable harm will result absent the entry of a TRO; thus, imposition of this rarely-imposed remedy is not appropriate.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is DENIED.

Dated: October 21, 2021

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

EC to be "dissipated or inaccessible the longer litigation is delayed." (D.I. 10 at ¶ 21) This type of argument sounds like it is referring to *reparable* harm, not irreparable harm. Moreover, even were the Court to get to the merits of Plaintiff's new argument, it would not be persuasive. As noted above, Plaintiff has only made out a clear, understandable case for breach as to two merchants (Zeus and whichever company Mr. Banerjee is associated with), not "all" merchants involved in litigation with EC (or anything close to that). Additionally, there is nothing in the record showing that EC's many merchants are "all talking to each other," nor about how Defendant's alleged breaches are of such a widespread nature that they threaten to "implode" the company. (Indeed, Plaintiff has repeatedly stated that EC is business was expected to be naturally winding down in the next few months.). (D.I. 1-2 at 113-14; *see also* D.I. 14 at ¶¶ 3, 25-26; Tr. at 63-64) And lastly, there is nothing in the record regarding communication between such merchants and regulators, nor about the potential consequences that might flow from such conduct.