IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DARNELL PONDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-1239-MN-CJB |
| | ) | |
| KHAAZRA MAARANU, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ELECTRONIC COMMERCE LLC, | ) | |
| | ) | |
| Nominal Defendant. | ) | |

**MEMORANDUM ORDER**

Presently pending before the Court in this case is Defendant Khaazra Maaranu's ("Defendant") motion seeking a temporary restraining order ("TRO") and a preliminary injunction (the "Motion"). (D.I. 16) Plaintiff Darnell Ponder ("Plaintiff") and Defendant are each 50% owners of Electronic Commerce, LLC ("EC"), a Delaware limited liability company ("LLC"). With his Motion, Defendant seeks to enjoin Plaintiff from engaging in a broad array of conduct with regard to EC and EC-related business affairs, including: (1) "preventing [Defendant] from accessing the books, records, accounts and information of [EC]" and; (2) "transferring assets of [EC]." (D.I. 16 at 1; *see also* D.I. 16-1 at ¶¶ 2-15; D.I. 16-2 at ¶¶ 2-15; D.I. 17 at 2) Plaintiff opposes the Motion. For the reasons set forth below, Defendant's Motion is DENIED.

**I.      BACKGROUND**

Given the parties' desire for a quick resolution of the Motion, the Court will dispense with a lengthy recitation of the relevant factual background. Instead, it will reference any relevant facts or portions of the record in Section III below.

With regard to this matter's procedural background, the case was removed to this Court on August 27, 2021. (D.I. 1) Defendant filed his Answer and Counterclaims on September 3, 2021. (D.I. 5) The instant Motion was filed on September 14, 2021, (D.I. 16), and briefing was completed on the Motion on October 4, 2021, (D.I. 32). The parties have jointly consented to the Court's entry of a final order as to the Motion, (D.I. 23), and the Court held a hearing on the Motion via videoconference on October 6, 2021 (hereinafter, "Tr.").[1]

## II.  LEGAL STANDARD

"A request for a TRO is governed by the same general standards that govern the issuance of a preliminary injunction." *Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp.*, C.A. No. 19-149 (MN), 2019 WL 3855015, at *1 (D. Del. Mar. 5, 2019) (internal quotation marks and citations omitted). TROs and preliminary injunctions constitute remedies that are "extraordinary" in nature and are only appropriate in "limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks and citation omitted); *accord Mallet & Co. Inc. v. Lacayo*, Nos. 20-3584, 21-1028, 21-1029, 2021 WL 4810168, at *19 (3d Cir. Sept. 24, 2021) (noting that a "high burden [is] placed on the moving party to establish that an injunction is warranted" as "the grant of injunctive relief is an extraordinary remedy") (internal quotation marks and citation omitted); *Corp. Synergies Grp., LLC v. Andrews*, 775 F. App'x 54, 59 (3d Cir. 2019) ("A preliminary injunction is an

---

[1]  The Court has additionally been referred the instant case to hear and resolve all pre-trial matters, up to and including expert discovery matters, by United States District Judge Maryellen Noreika. (D.I. 26)

extraordinary remedy never awarded as of right.") (internal quotation marks and citation omitted).

In order to obtain a TRO or a preliminary injunction, a movant must establish that: (1) it is likely to succeed on the merits of its claims; (2) it is likely to suffer irreparable harm without relief; (3) the balance of harms favors it; and (4) the relief requested is in the public interest. *Kamdem-Ouaffo v. Task Mgmt. Inc*, 792 F. App'x 218, 221 (3d Cir. 2019). The movant cannot be granted relief if it does not "meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits . . . and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Id.* (certain internal quotation marks and citation omitted); *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly*, 858 F.3d at 179.

**III.   DISCUSSION**

Below, the Court will first set out the legal standard for the first TRO/preliminary injunction factor: establishing a likelihood of success on the merits. Then it will address Defendant's arguments and will explain why Defendant's failure as to this factor leads the Court to deny the Motion.

In order to demonstrate that there is a likelihood that it will prevail on the merits, a party must "prove a prima facie case, not a certainty that he or she will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001) (citation omitted). This showing "does not mean more likely than not" and instead amounts to a reasonable chance, or probability, of winning. *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011). On

3

the other hand, "it is not enough that the chance of success on the merits be better than negligible[,] and more than a mere possibility of relief is required." *Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 77 (3d Cir. 2017) (internal quotation marks, brackets, and citation omitted). As was noted above, the "moving party's failure to show a likelihood of success on the merits must necessarily result in the denial of a preliminary injunction." *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012) (internal quotation marks and citation omitted).

In Defendant's opening brief, when explaining why he was likely to succeed on the merits, Defendant focused only on two particular types of claims. The Court will address those in turn.

First, Defendant argued that he is likely to succeed in this case because he has shown that Plaintiff "has brazenly breached his contractual obligations" that were "owed to [EC] and [Defendant.]" (D.I. 17 at 12; *see also* D.I. 32 at 5) What "contractual obligations" are being referred to here? There is a contract in the record before the Court: a "Limited Liability Company Agreement of Electronic Commerce LLC, a Limited Liability Company" (the "LLC Agreement"), which is a 2019 contract entered into between Plaintiff and Defendant regarding the formation and management of EC. (D.I. 1, ex. B at 124-37;[2] D.I. 18, ex. 2) In his Complaint in this case, *Plaintiff* asserts that certain of Defendant's actions amount to a breach of this LLC Agreement. (D.I. 1, ex. B at 116-17)

Importantly, however, *Defendant's Counterclaims* do not include any claim asserting a breach of contract against Plaintiff—either as to a breach of the LLC Agreement or a breach of

---

[2]  Citations to D.I. 1, ex. B will be to the document's ECF-generated page numbers.

some other contract between the two men. (*See* D.I. 5 at ¶¶ 211-49;[3] Tr. at 85 (Defendant's counsel acknowledging that Defendant has "not filed" a breach of contract claim in this case)) A trial court's charge as to a motion like this is to "analyze the elements of the movant's claims to determine whether the movant can likely meet each element." *Fres-co Sys. USA Inc.*, 690 F. App'x at 77 (citation omitted). However, since Defendant's pleading does not actually allege breach of contract, it also necessarily does not allege facts demonstrating that Defendant will likely establish the elements of a breach of contract claim in this case. In sum, the Court does not see (and Defendant has not explained) how Defendant could possibly have demonstrated a likelihood of success on the merits as to a claim that he is not even pressing. (Tr. at 85 (Defendant's counsel acknowledging that it was a "fair point" that Defendant could not show a likelihood of success as to a claim that Defendant has not actually advanced in his pleading)) Thus, this cannot be a basis on which to grant injunctive relief.

Second, Defendant asserts in his briefing that he is likely to succeed on the merits because he has shown that Plaintiff "has brazenly breached his . . . fiduciary duties owed to [EC] and [Defendant] by mismanaging [EC,] [] orchestrating [Commercial Bank of California, or "CBCal"]'s Termination Notice[,]"[4] and by "continu[ing] to directly compete with [EC] through

---

[3] All citations to Defendant's Answer and Counterclaims will be to paragraphs in the "Counterclaims" portion of the pleading, unless otherwise noted.

[4] EC is an independent sales organization that represents a bank or other financial institution and that promotes the bank/institution's credit card processing services to third party merchants. (D.I. 5 at ¶ 17) CBCal is EC's sponsoring bank; however, in light of various concerns that CBCal has raised about EC's business practices, in July 2021, CBCal filed the above-referenced "Termination Notice." (*Id*. at ¶¶ 26, 197) Pursuant to that notice, EC allegedly has until December 20, 2021 to "either transfer its business to a new sponsoring bank or to resolve its issues with CBCal such that [CBCal] will rescind the Termination Notice." (*Id*. at ¶ 201)

[Tangram Payments LLC, or "Tangram"[5]]."  (D.I. 17 at 12)  Defendant *does* have a counterclaim that mirrors these allegations (or at least some of them).  In that regard, Defendant has asserted a counterclaim for "Breach of Fiduciary Duty" against Plaintiff (the First Claim For Relief in Defendant's Counterclaims, hereafter referred to as the "breach of fiduciary duty claim").  (D.I. 5 at ¶¶ 211-28)  In that counterclaim, Defendant asserts that Plaintiff owes EC and Defendant the "fiduciary duties of loyalty, care, honesty, and a duty to discharge [his] duties in good faith" pursuant to Delaware law (which the parties agree applies here).  (*Id.*)[6]  Defendant then alleges that Plaintiff has breached these duties in various ways, such as by:  (1) "devot[ing] less than [his] full time, energy, and attention to [his] duties for [EC] and [] instead devoting time, energy, and attention to competing with [EC] by directing business opportunities to himself and his other businesses, including Tangram"; (2) using EC's assets, monies, and employees for the "benefit of Tangram and [Plaintiff's] other businesses"; and (3) "divert[ing] business opportunities" and "corporate assets" from "[EC] to Tangram and [Plaintiff's] other businesses and otherwise directly competing against [EC.]"  (*Id.*)[7]

       The Court concludes that Defendant has not done enough to demonstrate why he is likely to succeed on the merits as to this breach of fiduciary duty claim.  In this regard—and similar to

---

[5]    Tangram is a payment processing company formed and run by Plaintiff and others (but not Defendant); Defendant alleges that Tangram competes with and has taken business away from EC.  (D.I. 5 at ¶¶ 166, 169, 175, 203)

[6]    Defendant also brings three other counterclaims in this case (the Second, Third and Fourth Claims for Relief in Defendant's Counterclaims), none of which Defendant has put at issue with regard to this Motion.  (D.I. 5 at ¶¶ 229-49)

[7]    Contrary to Defendant's assertions in his briefing, Defendant's breach of fiduciary duty claim does not mention CBCal or the Termination Notice.  (D.I. 5 at ¶¶ 211-28)  Instead, that claim, as pleaded, seems to be all about Plaintiff's association with Tangram.  (Tr. at 86)

Plaintiff's own claim regarding a breach of fiduciary duty, which the Court recently took up in resolving Plaintiff's motion seeking a TRO, (D.I. 35 at 6 & n.9)—Defendant simply has not done enough in his briefing to explain the contours of his claim and why, pursuant to Delaware law, his claim is strong.  For one thing, Defendant's briefing was not explicit as to what type of breach of fiduciary duty claim he is likely to succeed on (i.e., the duty of care, or the duty of loyalty, or some other such duty).  (Tr. at 96, 98, 104)  Second, in the nine-page "Statement of Facts" section of his opening brief (where Defendant presumably was setting out the key facts that the Court should consider as to this claim), Defendant included almost no citations to the record.  (D.I. 17 at 3-11)  This left the Court to have to hunt around blindly in order to try to figure out where in the record such facts are actually located.[8]  *See also Gresham v. Delaware Dept. of Health & Social Servs.*, C.A. No. 16-1315 (MN), 2020 WL 228280, at *5 (D. Del. Jan. 15, 2020) (noting that "'[t]he court is not obligated to scour the record to find evidence that will support a party's claims'" and that "'[j]udges are not like pigs, hunting for truffles buried in the record'") (quoting *Perkins v. Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011); *Doeblers' Pa., Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)).  And lastly, in his briefing, Defendant did not advise the Court as to:  (1) what showing suffices to make out a breach of any type of fiduciary duty under Delaware law; and (2) how Delaware caselaw involving similar factual circumstances demonstrates that Plaintiff has likely breached the relevant duty.  (*See generally* D.I. 17; *see also* Tr. at 96)  The law in Delaware regarding a breach of fiduciary duty varies according to which type of duty is allegedly breached.  And in the absence of any

---

[8]   This amounts to a violation of District of Delaware Local Rule 7.1.3(c)(E).  (Tr. at 84-85)

meaningful citation to relevant caselaw (and explanation as to why it supports Defendant's claim), the Court cannot conclude that such a claim is likely to succeed.[9]

It could well be that Plaintiff's activities with Tangram ultimately do rise to the level of a breach of a fiduciary duty, such as the duty of loyalty. But the entry of a TRO or a preliminary injunction is an "extraordinary and drastic" remedy, and is not granted as a matter of right. If the Court is going to be asked to grant such extraordinary relief at the beginning of a case—before nearly any discovery has occurred and before the parties have had the ability to fully vet each other's allegations—it understandably would want the movant to make its entitlement to such relief clear. Here, Defendant failed to meet his burden as to the first factor in the TRO/preliminary injunction analysis, and so the Court must deny his Motion.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion is DENIED.

Dated: November 12, 2021

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[9] At oral argument, Defendant's counsel stated that a "breach of a fiduciary duty, which is . . . essentially what this action is about, … is rather 'basic'" and that the elements of a breach of fiduciary duty claim are "rather standard throughout and [] assume[dly] [] are in Delaware as well"; counsel said that Defendant did not include citation to relevant law in his briefing because "[Defendant] thought it was rather apparent." (Tr. at 81-82) The Court is not so sure that Delaware law regarding the breach of various fiduciary duties is, in fact, "basic." But at a minimum, in order to show a likelihood of success as to a breach of fiduciary duty claim, a party would need to specify what duty is at issue and provide at least some citation to relevant caselaw—so as to demonstrate that, on these facts, a fact finder would have a good basis to conclude that such a breach has likely occurred. Indeed, later in oral argument, Defendant's counsel acknowledged that "[t]here [wa]s no question that [counsel] should have included [legal citations to relevant case law]" in Defendant's briefing. (*Id.* at 82)